670

■ Steven Bruno et al., Appellants, v Trus Joist a Weyerhaeuser Business, Individually and as Subsidiary of Weyerhaeuser Company, Defendant, Lakeland Lumber Corporation, Appellant, and Joseph F. Galea, AIA Architect, Respondent. (And Third-Party Actions.) [929 NYS2d 163]—

The plaintiffs allege that in May 2000, the plaintiff Steven Bruno, as agent for the plaintiff SDR Design Interiors (hereinafter SDR), entered into an oral agreement with the defendant Joseph F. Galea, pursuant to which Galea agreed to perform architectural and design services for Bruno in connection with the construction of Bruno's residence in Putnam Valley. Pursuant to the oral agreement, Galea prepared stamped architectural plans, which were filed with and approved by the Town of Putnam Valley Building Department (hereinafter the Building Department) on July 25, 2000. Notably, Galea's plan called for the use of 2-inch-by-12-inch traditional wood joists, and was based on standard finishes and materials.

Thereafter, the plaintiffs unilaterally decided to use manufactured wood joists, which contain composite wood materials, instead of the wood joists set forth in Galea's architectural plan, and chose the Trus Joist I-Beam system, manufactured by the defendant Trus Joist a Weyerhaeuser Business (hereinafter Trus Joist). Subsequently, SDR, as agent for Bruno, retained the defendant Lakeland Lumber Corporation (hereinafter Lakeland) to design, manufacture, and/or supply the framing system for the project. Unbeknownst to the plaintiffs, a company known as Prime Source prepared additional plans for the framing system for Lakeland and/or Trus Joist, which provided for the use of Trus Joist products for the framing. In late September 2001, shortly after the house was completed and Bruno, his companion Sharon D. Robbins, and their family took up residency, cracks developed in the heavy stone flooring and ceramic tile flooring used in much of the first floor.

On or about September 29, 2004, the plaintiffs commenced this action against Trus Joist, Lakeland, and Galea to recover damages for breach of contract, architectural malpractice, breach of express and implied warranties, and negligent misrepresentation. Each of the defendants separately answered, denying the material allegations of the complaint, and asserting cross claims against each other for indemnification.

Ultimately, Galea moved for summary judgment dismissing the complaint and all cross claims insofar as asserted against him, arguing, inter alia, that he did not depart from accepted standards of architectural practice, and that the services he performed were not the proximate cause of the plaintiffs' alleged damages. The plaintiffs and Lakeland separately opposed the motion. The Supreme Court granted the motion on the ground that "Mr. Galea's drawings were . . . altered and completely changed by the plaintiffs. The building constructed was not in accordance with Mr. Galea's original drawings approved by the building department." In its order, the Supreme Court, relying on a letter from SDR to Galea dated May 18, 2003, and submitted by Galea in support of his motion, concluded that SDR "acknowledges that [the plaintiffs] made unilateral decisions to change the design and structural load bearing by using the engineered joist product in lieu of lumber upon which Mr. Galea prepared his calculations. Plaintiff[s] also used ceramic tiles and stone[,] which increased the weight on all fitting beams which they chose to install." The plaintiffs and Lakeland separately appeal. We affirm the order insofar as appealed from by the plaintiffs, and insofar as reviewed on Lakeland's appeal.

"A claim of professional negligence requires proof that there was a departure from the accepted standards of practice and that the departure was a proximate cause of the injury" (*Kung v Zheng*, 73 AD3d 862, 863 [2010] [internal quotation marks omitted]; *see Estate of Burke v Repetti & Co.*, 255 AD2d 483 [1998]).

Here, Galea established, prima facie, that his stamped architectural plan, which was approved by the Building Department on July 25, 2000, was neither a departure from the accepted standards of practice nor a proximate cause of the plaintiffs' alleged damages (*see generally Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). In his affidavit, Galea averred that, after submitting his stamped architectural plan in July 2000, he had no further involvement with the project. He further asserted that it was only during an informal visit to the completed house on May 18, 2003, that he first realized that manufactured wood product had been used for the joists and beams instead of the 2-inch-by-12-inch traditional wood floor joists and beams he had specified in his plan, and that certain support beams and columns included in his plan had not been installed. Galea opined that the omissions and revisions to his architectural plan may have caused the structural integrity of the building to be inadequate, causing the floor problems.

In his affidavit, Galea also asserted that it was only during his visit on May 18, 2003, that he first realized that the plaintiffs had used heavy-weight stone and tile in their home, of which the plaintiffs had not informed him when he had prepared the architectural plan. In making this assertion, Galea referred to a letter to him from SDR, dated May 18, 2003, and signed by Robbins, an SDR principal, which set forth a chronology of events indicating that it was only after the Building Department had approved his architectural plan that the plaintiffs unilaterally decided to substitute the Trus Joist system for the traditional wood framing materials he had specified. Galea also alleged, based on this letter, that the plaintiffs had decided to install radiant floor heating, that they believed manufactured wood framing was better suited to that type of heating system than traditional wood framing because use of manufactured wood framing made installation of the radiant floor heating system easier, and that they believed that manufactured wood joists would shrink less than traditional wood joists, which the plaintiffs concluded was better suited to their decision to install ceramic floor tile and stone on much of the first floor. Galea also submitted excerpts of the deposition testimony of the subcontractor who framed the house, who testified that it was Rob-

bins's idea to use manufactured wood joists, and that Robbins first announced this decision after construction had begun.

In opposition, the plaintiffs and Lakeland failed to raise a triable issue of fact (*see generally Alvarez v Prospect Hosp.*, 68 NY2d at 324; *Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]). Although the plaintiffs contend that, prior to Galea's completion of the architectural plan, they told him of their intent to use stone and tile on the first floor, and that they wished to use manufactured wood joists, it is undisputed that Galea's architectural plan called for the use of 2-inch-by-12-inch traditional wood joists. Indeed, even accepting the plaintiffs' assertion that they told Galea of their desire to use manufactured wood joists before he completed his architectural plan, the final plan clearly specified the use of 2-inch-by-12-inch wood joists. Accordingly, the plaintiffs' contentions that Galea never advised them against using manufactured wood joists and did not advise them that his original structural design would need to be revised if manufactured wood was used instead of traditional lumber failed to raise a triable issue of fact, as Galea's final architectural plan established that he ultimately approved only the use of manufactured wood joists.

In an affidavit submitted by Robbins, she disputed Galea's assertion that he was not involved with the project after filing his architectural plans with the Building Department in July 2000. Robbins asserted that, after July 2000, but before construction began in October 2000, she consulted with Galea about changes to his plan that involved the creation of a full basement, rather than a crawl space, and an alteration that involved, among other things, shifting a foundation wall and changing the orientation of the basement joists. Even accepting the plaintiffs' assertion that these consultations occurred after July 2000, the plaintiffs failed to raise a triable issue of fact, in light of Galea's undisputed insistence that the plaintiffs use 2-inch-by-12-inch wood joists. In any event, the documents submitted in support of this contention did not indicate, in the first instance, that, during these consultations, the plaintiffs informed Galea that they had decided to use manufactured wood joists despite his specification of traditional wood joists, or that they would be using stone and tile on much of the first floor. More critically, the revised drawings that purportedly resulted from Robbins's post-July 2000 consultation with Galea were prepared by SDR, not Galea. Further, the plaintiffs concede that Lakeland's price estimate for supplying the Trus Joist materials was based on the Prime Source drawings, and that the Prime Source drawings differ from Galea's architectural plan in both beam sizes and framing spacing.

Although the plaintiffs' expert opined, in his affidavit, that Galea's original, approved architectural plan contained an improper structural load design, the Trus Joist materials were provided pursuant to the Prime Source drawing, not Galea's approved architectural plan. Accordingly, the expert's opinion that Galea's architectural plan constituted a design defect that proximately caused the defects in the subject home is not relevant and, therefore, failed to raise a triable issue of fact, as the plaintiffs did not use Galea's plan.

Although the Supreme Court granted Galea's motion in its entirety, without explicitly setting forth the grounds for dismissal of the nonmalpractice causes of action asserted against him, summary dismissal of all of the causes of action was nonetheless appropriate, since the remaining causes of action, insofar as asserted against Galea, were duplicative of the professional malpractice cause of action, as they arose from the same facts and do not allege distinct damages (*see Alizio v Feldman*, 82 AD3d 804 [2011]; *Town of Wallkill v Rosenstein*, 40 AD3d 972, 974 [2007]).

Accordingly, the Supreme Court properly granted Galea's motion for summary judgment dismissing the complaint and Lakeland's cross claims insofar as asserted against him. Dillon, J.P., Belen, Sgroi and Miller, JJ., concur.